### W. P. CROASDALE v. ELECTA W. HILL.

No. 15,555.    (96 Pac. 37.)

SYLLABUS BY THE COURT.

1. NOTICE—*Bona Fide Purchaser—Sufficient to Put upon Inquiry.* A purchaser who gains information affecting an estate from one instrument is ordinarily chargeable with notice of the contents of other instruments affecting the same estate to which an examination of the first instrument would naturally have led him.

2. ―――― *Amount of a Note Referred to in a Mortgage.* One who buys lands subject to a mortgage the record of which does not definitely show when the mortgage debt shall become due, nor the amount required to satisfy it, but does show that under certain contingencies the amount named in the mortgage may be increased by interest charges, and does refer to a note from which the extent of the debt and mortgage lien may be ascertained, is chargeable with notice of what might have been discovered by an examination of the note and of all facts that he could have obtained by diligent inquiry.

3. ESTOPPEL—*Statements by Agent Holding Note for Collection.* A statement, made to the purchaser by one who held the note and mortgage as a collection agent, which gives the original amount of the note and the payments indorsed thereon, but does not undertake to give all of the terms of the note or the amount remaining unpaid, does not estop the mortgagee from collecting the full amount of the debt as shown by the note.

Croasdale v. Hill.

Error from Lyon district court; FREDERICK A. MECKEL, judge. Opinion filed May 9, 1908. Affirmed.

*L. B. Kellogg,* and *W. L. Huggins,* for plaintiff in error.

*Hamer & Harris,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: Electa W. Hill brought this suit against W. P. Croasdale to recover on a promissory note for $745 and to foreclose a mortgage which had been given to secure its payment. The note and mortgage were executed by H. M. Brady, a former owner of the mortgaged land, and Croasdale acquired the land under a deed containing the usual covenants that the land was clear of encumbrances except a mortgage, which was described, "and the unpaid balance of a second mortgage of $745," which Croasdale agreed to pay, and that is the mortgage in controversy. The only dispute between the parties is as to the amount due on the note and this second mortgage. A number of partial payments had been made and Croasdale claimed that the mortgage debt remaining unpaid was only $269, and this amount he tendered, while the plaintiff claimed judgment for a larger amount. The court awarded judgment against Croasdale for $439.70, and of that ruling he complains. He insists that the record of the mortgage, upon which he had a right to rely when he purchased the land, did not disclose a lien for the amount that was awarded by the court, and, further, that a statement made by F. C. Newman, president of the bank in which the note was held for collection, estopped plaintiff from claiming that amount. The following is a copy of the note and the indorsements thereon:

"$745.            EMPORIA, KAN., March 30, 1903.
"For value received I promise to pay to Francis S. Hill, or order, at the Citizens Bank, of Emporia, Kan.,

seven hundred forty-five and no-100 dollars, payable as follows, to wit:

March 30, 1904, $244.70.
March 30, 1905, $232.70.
March 30, 1906, $220.70.
March 30, 1907, $153.70.

With interest at 10 per cent. per annum after maturity, if not paid when due. Privilege given to pay this note, or $100 or any multiple thereof, at any time. If any part of this note is not paid at maturity the mortgage by which the note is secured shall be foreclosable at once, without notice, at the option of the holder. The note is secured by a second mortgage on real estate.

[Indorsements:] HENRY M. BRADY."

"6-21, 1904. Paid forty-four 70-100 dollars.

Paid one hundred dollars, November 22, 1904 (being pp. No. 18,493).

Paid fifty dollars 25-100 ($50.25), being int. on all to March 30, 1905.

August 9, 1905, paid fifty dollars to Electa W. Hill and at her request.

March 29, 1906, paid two hundred thirty-one dollars."

The mortgage was of the same date as the note, but it did not contain a copy of the note. It did contain the following paragraph:

"This grant is intended as a mortgage to secure the payment of a certain promissory note this day executed and delivered by the first party to the second party, for seven hundred forty-five dollars, due in accordance with a certain note of even date, and bearing 6 per cent. interest from the date thereof if not paid promptly when due. Failure of the first party to pay any part of said note when due, or failure to pay any prior encumbrance or the interest thereon when due, or failure to pay the taxes on the above property when due, or failure to keep up the insurance on the property, shall, at the option of the legal holder of the note secured, cause all of said debt to become due and payable immediately with 10 per cent. interest from the date hereof, and render this mortgage foreclosable at once, without notice."

While Croasdale was negotiating for the land, and before its purchase was completed, he applied to New-

man, the president of the bank, through W. A. Willis, for information as to the amounts due on the mortgages against the land, and received the following statement:

"EMPORIA, KAN., February 26, 1906.
"*W. A. Willis, Emporia, Kan.:*
"DEAR SIR—Referring to the mortgage for $1800, made by Henry M. Brady to me and assigned by me to Marinda A. Holt, of Farmington, Me., which said mortgage covers the northwest quarter of section 12, township 20, range 10, of this county, and is recorded in book 46 of mortgages, at page 380, beg to advise you that this mortgage draws interest at the rate of $5\frac{1}{2}$ annually.

"Referring to the mortgage made by Henry M. Brady to Francis S. Hill for $745, covering the same land, beg to advise you that the note secured by this mortgage is in our bank, and upon the back are the following indorsements:
June 25, 1904, paid $44.70.
November 22, 1904, paid $100.
March 30, 1905, paid $50.25.
August 9, 1905, paid $50.
Making a total of $244.95 indorsements on the back of said note. There is a payment due on this note of $232.70, March 30, 1906, and the balance of it will be due March 30, 1907.
Yours very truly,
F. C. NEWMAN,
*President Citizens' National Bank, Emporia.*"

On March 29, 1906, following the receipt of the statement, Croasdale paid $231, and this amount, as we have seen, was indorsed on the note. It is said that when Croasdale, a prospective purchaser, undertook to ascertain the extent of the lien against the land he learned from the mortgage record that the debt was $745, that it bore no interest except in case of default, and the one remaining matter for inquiry then was what payments had been made and when the balance would be due. When this information was given him by Newman no mention was made of the larger amount shown to be due according to the terms of the note, and

it is contended that the excess of the note over the amount of the mortgage was, as to him, a secret lien, and that the failure of Newman to tell him of the excess precludes the plaintiff from recovering it at this time. While the note named $745 as the amount promised, the annual payments specified in the note aggregated $851.80; but it is manifest that this total is made up of the principal sum and interest thereon at six per cent. up to the time of the first payment, and the same rate thereafter upon the amounts remaining due after each successive payment should be made. It is not easy to see how the plaintiff could be bound or estopped by what Newman, a mere collection agent, said to a stranger; but if it were assumed that Croasdale had a right to rely on Newman's statement there was still no reason why he should have been deceived or misled. He purchased the land subject to this mortgage. An examination of the mortgage record alone showed that in certain contingencies the debt bore interest and might be much larger than $745. He was put upon inquiry as to the accumulation of the interest upon the mortgage debt, and this clue, if diligently followed, would have led to a knowledge of the aggregate amount due upon the note. Having his attention drawn to the matter of interest and to the condition that the total debt might be more than the principal named in the mortgage, he could not close his eyes nor rest safely until he had pursued the inquiry and learned the terms of the note mentioned in the mortgage and the amount of the mortgage debt.

Croasdale concedes that it was his duty to inquire, and that he is chargeable with notice of all that he might have learned by a diligent inquiry, but he insists that when he made inquiry of Newman and obtained his statement he had used the degree of diligence which the law requires and had a right to rely upon that statement. Granting that he might rest upon that statement, how could it have misled him?

It did not purport to give all of the terms of the note, or the amount then due or that finally would be due upon it. It gave the dates and the amounts of the several payments indorsed upon the note and the time and the amount of the next payment, and also the time when the balance would be due. It did not purport to state what the final balance would be nor whether any interest payments would enter into that balance. There was nothing in the statement to show whether there had been any defaults in the prior payments or whether interest had accrued by reason of defaults, as provided for in the mortgage. The statement, so far as it went, gave the facts correctly, and Croasdale had no reason to complain of either the form or extent of the statement, because it appears that it was prepared by his agent, Willis, after a conversation with Newman. He could easily have seen the note, learned its terms and the extent of the mortgage lien, and if the true amount due was a matter of consequence to him he could have made the inquiry and had the result included in the written statement. The information was not incorrect, and the inquiry should have been extended, if further information was desired.

Even if the statement given had been incorrect it may well be doubted whether Croasdale could have relied on it when there was manifest opportunity to examine the note itself. (*Jones v. Smith,* 1 Hare [Eng.], 43; 1 Jones, Mort., 6th ed., §§ 70, 578, 579.) The general rule is that a party acquiring knowledge affecting an estate from one instrument is ordinarily charged with notice of the contents of other instruments affecting the same estate to which an examination of the first would naturally have led him. Enough was shown in the mortgage to call attention to the note and to raise an inquiry as to the amount of the lien, and it would seem that a prudent man would not have stopped short of an examination of the note, from which the true

10—78 KAN.

amount due could have been definitely learned. At any rate it is clear that the statement made does not estop the plaintiff nor prevent her from enforcing payment of the entire mortgage debt.

The judgment is affirmed.